REQUESTED BY: Dear Senator:
In your letter of April 14, you asked our opinion as to the validity of LB 170, as amended. Due to the extremely short time remaining before the end of the session, we have had no time at all to research the questions we may have, and can give you only general impressions we gather from reading the bill.
We find several areas of vagueness in the bill, the first of which is in the definition of `revaluation' in section 2. It defines revaluation as the process of determining actual values by any established method. We point out that sections 77-1501 to 77-1515 require the county board of equalization to meet each year, commencing on April 1 and ending on May 30. At that time the county board of equalization hears protests concerning valuations and may also equalize assessment of omitted or undervalued property. We believe that such a process qualifies as `revaluation' under the bill's definition, but we are not confident that that is the Legislature's intention.
This vagueness carries over into section 3, which requires all counties to `implement a revaluation' of all lands and improvements effective for the 1979 assessments, and each year thereafter until such time as the values are determined by the Tax Commissioner. The counties will, no doubt, argue that they do so each year, pursuant to existing statutes.
Section 3 also provides that if a county fails to complete a revaluation to the satisfaction of the Tax Commissioner, he shall notify such county and the State Board of Equalization and Assessment, and the county assessor of such county shall appear before the state board at the annual hearing of certification of the board.
The statute does not specify what factors will or will not satisfy the Tax Commissioner, nor provides for any hearing at which the county can attempt to satisfy him. It would appear to permit the Tax Commissioner to exercise arbitrary power, and to be `satisfied' with one county's revaluation, and dissatisfied with that of another, upon any basis he sees fit, or upon no basis at all. There should be standards for his determination.
Section 3(2) provides that a county may contract for the revaluation of the county. Because of the vagueness of the definition of `revaluation,' it is impossible to tell what such a contract would involve. We cannot tell whether it means to determine some percentage increase of all of the real estate in the county, or of selected classes of such real estate, or to determine actual value of individual pieces of property by some method different from a reappraisal, or something else entirely. The bill does not express the Legislature's intention in this respect, and leaves the decision in this respect in the hands of the counties, or the Tax Commissioner.
The section does provide that such a contract, when entered into with the Tax Commissioner, shall be subject to the same conditions imposed under sections 77-1301.13 to 77-1301.16. This, however, gives no satisfactory answers to our questions, since these sections deal with reappraisal contracts, and a revaluation contract is obviously supposed to be something different.
Section 8 provides that the Tax Commissioner shall cause a reappraisal to be conducted in any county `whole level of values used for assessment purposes for all or any class of real property, as determined under section 77-1327, varies by more than five percentage points from the assessed value as required under section 77-201.' This seems to assume that some level of values determined under section77-1327 is used for assessment purposes. This is not true. Section 77-1327 simply requires the Tax Commissioner to make `assessment ratio studies.' We assume this means sales assessment ratio studies. In any event, such studies are not `used for assessment purposes.' The level of values used for assessment purposes are those fixed pursuant to section77-201. Section 8 is therefore very confusing.
Sections 9 and 11 are also confusing. Section 9 says that after a county has been appraised by the state, if its level of values for all of any class of real property varies by more than five percent as determined under section 11, the Tax Commissioner shall cause a reappraisal to be conducted the next year. Section 9 does not specify what the values of that county must vary from, but section 11 seems to indicate that it is from (1) the level of values used for assessment purposes for any adjoining county, or (2) the level of values used for assessment purposes for any class of real property for any adjoining county.
We can make some sense out of the second category. We suppose it refers to a variation between the same class of irrigated land in adjoining counties, for example. But what does `the level of values used for assessment purposes for real property' mean? Does it mean the total value of all real estate in the respective counties? If so, we suspect that Washington County will resent being reappraised because its total value of real estate is more than five percent below that of Douglas County.
Furthermore, section 9 would require a reappraisal of both counties involved. In other words, if county A's values are more than five percent below county B's, by the same token county B's are more than five percent above county A's. Section 9 requires a reappraisal if they vary. Therefore, both of them vary, and both must be reappraised. This is after a reappraisal by the state. We do not understand exactly what is intended.
Section 13 amends section 77-509, R.R.S. 1943, and provides that the State Board of Equalization and Assessment, in reviewing valuations of the various counties, `may certify valuations so that the values for all or any class of property for adjoining counties vary five or fewer percentage points.' This seems to contain the same constitutional problem we discussed in our Opinion No. 62, dated April 6, 1977, in appearing to give legislative sanction to variations from uniformity of taxation. Article VIII, Section 1, of the Constitution requires uniformity of taxation. A five percent variation is not uniformity. We would all be happy if the board could come that close, but, theoretically, no variation is permissible. We believe there is serious doubt as to the validity of statutory sanction of lack of uniformity.
Furthermore, the goal is state-wide uniformity. Section 13 permits a five percent variation in adjoining counties, which could result in much greater variations among the counties, as that five percent was carried across the state.
In short, there is much in the bill which we find difficult or impossible to understand, and one provision which seems to violate Article VIII, Section 1, of the Constitution.